1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

| | |
|---|---|
| TAMARA FERGUSON and BRIAN HEINZ, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>   v.<br><br>T-MOBILE USA, INC.<br><br>                     Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Negligence<br>(2)  Negligence Per Se<br>(3)  Unjust Enrichment<br>(4)  Breach of Implied Contract<br>(5)  Breach of Confidence<br>(6)  Declaratory and Injunctive Relief<br><br>**DEMAND FOR JURY TRIAL** |

17

18

19

20

21

22

23

24

25

---

CLASS ACTION COMPLAINT - 1

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

Plaintiffs Tamara Ferguson and Brian Heinz ("Plaintiffs"), individually and on behalf of classes of similarly situated individuals (defined below), bring this action against Defendant T-Mobile USA, Inc. ("T-Mobile" or "Defendant"). Plaintiffs make the following allegations based upon personal knowledge as to their own actions and upon information and belief as to all other matters and believe that reasonable discovery will provide additional evidentiary support for the allegations herein.

## I.      NATURE OF THE CASE

1.      Just one day before it appeared at a hearing asking the Court in *In re T-Mobile Customer Security Data Breach Litigation*, MDL No. 3019 (W.D. Mo.) to finally approve its settlement of claims related to its August 2021 data breach, T-Mobile disclosed yet another data breach (the "Data Breach"). This time, T-Mobile exposed the personal information of 37 million of its pre- and post-paid customers. According to T-Mobile, the stolen personal identifying information ("PII") includes customers' names, email addresses, phone numbers, billing addresses, dates of birth, account numbers, and details of their service plans.

2.      "While these cybersecurity breaches may not be systemic in nature, their frequency of occurrence at T-Mobile is an alarming outlier relative to telecom peers," according to Neil Mack, a senior analyst for Moody's Investors Service.[1]

3.      As WIRED pointed out in August 2021, with respect to T-Mobile's last massive data breach: "[H]aving [this PII] centralized streamlines the [identity theft] process for criminals . . . ." And while it may be true that "names and phone numbers are relatively easy to find . . . a database that ties those two together, along with identifying someone's carrier and

---

[1] *T-Mobile Data Breach Exposes About 37 Million Accounts*, Reuters (Jan. 20, 2023), *available at* https://www.reuters.com/technology/t-mobile-says-investigating-data-breach-affecting-37-mln-accounts-2023-01-19/.

CLASS ACTION COMPLAINT - 2

fixed address, makes it much easier to convince someone to click on a link that advertises, say, a special offer or upgrade for T-Mobile customers. And to do so en masse."[2]

4.    As the target of many data breaches in the past, T-Mobile knew its systems were vulnerable to attack. Yet it failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect its customers' personal information, yet again putting millions of customers at great risk of scams and identity theft. Its customers expected and deserved better from the second largest wireless provider in the country.

5.    Plaintiffs now seek compensation under principles of common law negligence, unjust enrichment, breach of implied contract, and breach of confidence, for their damages and those of fellow Class members. Plaintiffs also seek injunctive relief to ensure that T-Mobile cannot continue to put its customers at risk.

## II.    JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 Class members, and one or more members of the classes are residents of a different state than the Defendant. The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

7.    This Court has personal jurisdiction over Defendant because it is headquartered in this District.

8.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), as Defendant resides, transacts business, committed an illegal or tortious act, has an agent, and/or can be found in this District.

---

[2] *The T-Mobile Data Breach is One You Can't Ignore*, WIRED (Aug.16, 2021), *available at* https://www.wired.com/story/t-mobile-hack-data-phishing/.

CLASS ACTION COMPLAINT - 3

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

### III.   PARTIES

9.      Plaintiff Tamara Ferguson is a resident of Lake Elsinore, California and has been a T-Mobile customer since approximately 2002. Ms. Ferguson received a notification from T-Mobile that her PII was accessed without authorization, exfiltrated, and/or stolen in the Data Breach.

10.     Plaintiff Brian Heinz is a resident of West Sacramento, California and has been a T-Mobile customer for over two years. Mr. Heinz received a notification on his T-Mobile account application that his PII was accessed without authorization, exfiltrated, and/or stolen in the Data Breach.

11.     Defendant, T-Mobile USA, Inc., is a Delaware corporation headquartered in this District at 12920 Southeast 38th Street, Bellevue, WA 98006. Defendant is a publicly traded company organized and operated for the profit and financial benefit of its shareholders. As of January 1, 2021, Defendant had annual gross revenues of well over $60 billion. Defendant collects and maintains the personal information of millions of U.S. consumers.

12.     Defendant's unlawful conduct was authorized, ordered, or performed by its directors, officers, managers, agents, employees, or representatives in the course of their employment and while actively engaged in the management of Defendant's affairs. Defendant, through its subsidiaries, divisions, affiliates, and agents, operated as a single unified entity with each acting as the alter ego, agent or joint-venturer of or for the other with respect to the acts, violations, and common course of conduct alleged herein and under the authority and apparent authority of parent entities, principals and controlling parties.

### IV.   FACTS

**A.      The Data Breach**

13.     As outlined above, T-Mobile has admitted it was the subject of a yet another massive data breach that affected millions of its customers. The customer PII the hackers have obtained include names, email addresses, phone numbers, billing addresses, dates of birth,

CLASS ACTION COMPLAINT - 4

account numbers, and details of their service plans. As WIRED put it, "T-Mobile seems to be approaching companies like Yahoo in the pantheon of repeated compromises."[3]

14.     According to T-Mobile, hackers were able to access the PII by manipulating one of the company's application programming interfaces (APIs). Though the initial intrusion occurred in November 2022, T-Mobile did not detect it until January 5—over a month later.

15.     As a result of the Data Breach, numerous data security experts are suggesting that affected consumers take steps to protect their identities.

**C.     T-Mobile Has Failed to Secure its Sensitive Data Repeatedly Over the Last Decade**

16.     T-Mobile is no stranger to data breaches. Rather, data breaches have been a nearly annual event for the company for many years.

17.     In August **2021**, T-Mobile disclosed a data breach impacting over 70 million individuals, which exposed customers' names, addresses, social security numbers, drivers license information, phone numbers, dates of birth, security PINs, phone numbers, and, for some customers, unique IMSI and IMEI numbers (embedded in customer mobile devices that identify the device and the SIM card that ties that customer's device to a telephone number)— all going back as far as the mid-1990s.

18.     In March **2020**, T-Mobile disclosed it was subject to a data breach that exposed customer and employee PII, including names, addresses, social security numbers, financial account information, government identification numbers, phone numbers and billing account information.[4] Later in 2020, T-Mobile suffered another data breach in which hackers accessed

---

[3] *T-Mobile's $150 Million Security Plan Isn't Cutting It*, WIRED (Jan. 20, 2023), *available at* https://www.wired.com/story/tmobile-data-breach-again/.

[4] *T-Mobile Breach Leads To The Exposure Of Employee Email Accounts And User Data*, Identity Theft Resource Center, Mar. 2020, available at https://www.idtheftcenter.org/t-mobile-breach-leads-to-the-exposure-of-employee-email-accounts-and-user-data/#:~:text=On%20Thursday%2C%20March%204%2C%202020%2C%20T-Mobile%20disclosed%20a,separate%20data%20breach%20notification%20letters%20on%20their%20website.

CLASS ACTION COMPLAINT - 5

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

customer proprietary network information (CPNI) and undisclosed call-related information for hundreds of thousands of customers.[5]

19.     In November **2019**, hackers accessed PII for roughly 1 million T-Mobile prepaid customers.[6] The PII in that breach included names, phone numbers, addresses, account information, and rate, plan and calling features (i.e., paying for international calls).[7]

20.     In **2018**, hackers gained access to T-Mobile servers and stole PII of roughly two million T-Mobile customers.[8] The stolen PII included names, email addresses, account numbers, other billing information, and encrypted passwords.[9] T-Mobile misleadingly downplayed the hack, claiming that no passwords were "compromised."[10] In truth, the hackers stole millions of encrypted passwords that were likely cracked due to the weak encoding algorithm employed by T-Mobile, leading one security expert to advise affected customers to assume their passwords were cracked and change them as a result.[11]

21.     In **2017**, Karan Saini, a security researcher, found a bug on a T-Mobile website that allowed hackers to access PII like email addresses, account numbers, and IMSI numbers,

---

[5] *Second Data Breach in 2020 for T-Mobile Exposed Customer and Call-Related Information of 200,000 Subscribers*, CPO Magazine, Jan. 11, 2021, available at https://www.cpomagazine.com/cyber-security/second-data-breach-in-2020-for-t-mobile-exposed-customer-and-call-related-information-of-200000-subscribers/#:~:text=T-Mobile%20suffered%20a%20data%20breach%20in%20which%20hackers,the%20fourth%20to%20hit%20the%20company%20since%202018.

[6] Coldeway, Devin, *More than 1 million T-Mobile customers exposed by breach*, TechCrunch, Nov. 22, 2019, available at https://techcrunch.com/2019/11/22/more-than-1-million-t-mobile-customers-exposed-by-breach/#:~:text=More%20than%201%20million%20T-Mobile%20customers%20exposed%20by,password%20data%29%20was%20exposed%20to%20a%20malicious%20actor.

[7] *Id.*

[8] Franceschi-Bicchierai, Lorenzo, *Hackers Stole Personal Data of 2 Million T-Mobile Customers*, Motherboard Tech, Aug, 23, 2018, available at https://www.vice.com/en/article/a3qpk5/t-mobile-hack-data-breach-api-customer-data.

[9] *Id.*

[10] *Id.*

[11] *Id.*

CLASS ACTION COMPLAINT - 6

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

just by knowing or guessing a customer's phone number.[12] According to Saini, "T-Mobile has

76 million customers, and an attacker could have ran a script to scrape the data (email, name,

billing account number, IMSI number, other numbers under the same account which are

usually family members) from all 76 million of these customers to create a searchable database

with accurate and up-to-date information of all users."[13] Saini explained "[t]hat would

effectively be classified as a very critical data breach, making every T-Mobile cell phone

owner a victim."[14] T-Mobile had no mechanism in place to prevent this type of critical data

breach, according to Saini.[15] According to a hacker, the bug had been exploited by multiple

hackers over a multi-week period before it was discovered by Saini.[16] In fact, the hackers who

found the bug before Saini went so far as to upload a tutorial on how to exploit it on

YouTube.[17]

22.     And in **2015**, T-Mobile customers' PII was accessed and exfiltrated in

conjunction with the Experian data breach. According to T-Mobile at the time, the company

was notified by Experian, a vendor that processes their credit applications, that they had

experienced a data breach. The hacker acquired the records of approximately 15 million

people, including new applicants requiring a credit check for service or device financing. The

records stolen included information such as name, address and birthdate as well as encrypted

fields with Social Security number and ID number (such as driver's license or passport

---

[12] Franceschi-Bicchierai, Lorenzo, *T-Mobile Website Allowed Hackers to Access Your Account Data With Just Your Phone Number*, Motherboard Tech, Oct. 10, 2017, available at https://www.vice.com/en/article/wjx3e4/t-mobile-website-allowed-hackers-to-access-your-account-data-with-just-your-phone-number.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

CLASS ACTION COMPLAINT - 7

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

number), and additional information used in T-Mobile's own credit assessment. Experian determined that encryption may have been compromised.[18]

**D.      Plaintiffs Expected T-Mobile to Keep Their Data Secure.**

   ***i.       Plaintiff Ferguson***

23.      Plaintiff Tamara Ferguson has been a customer of T-Mobile since approximately 2002.

24.      Ms. Ferguson places significant value on the security of her PII. She entrusted her sensitive PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

25.      In late November or early December 2022, Ms. Ferguson started receiving notifications that her personal information was found on the dark web.

26.      At the same time, Ms. Ferguson started noticing unauthorized charges on her debit and credit cards. Eventually she incurred so many unauthorized charges that she had to cancel her debit card multiple times, as well as two other credit cards. Ms. Ferguson is still waiting to find out whether some of the fraudulent charges to her credit card will be reimbursed.

27.      As a result of T-Mobile's exposure of Ms. Ferguson's PII, she has spent hours attempting to mitigate the affects of the Data Breach, including monitoring financial and other important accounts for fraudulent activity. Ms. Ferguson anticipates that she will also have to spend significant time in the future on those tasks, as they are ongoing and time consuming.

---

[18] *A Letter from CEO John Legere on Experian Data Breach*, Sept. 30, 2015, available at https://www.t-mobile.com/news/blog/experian-data-breach

CLASS ACTION COMPLAINT - 8

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

28.     Given the highly-sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Ms. Ferguson has already suffered injury and remains at a substantial and imminent risk of future harm.

*ii.*     ***Plaintiff Heinz***

29.     Plaintiff Brian Heinz has been a customer of T-Mobile for approximately two years. He subscribes to T-Mobile's Magenta Military Plan.

30.     Mr. Heinz places significant value on the security of his PII. He entrusted his sensitive PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

31.     A few weeks ago, Mr. Heinz learned that someone was attempting to make fraudulent charges on his debit card. As a result, he was forced to cancel the card and obtain a new one.

32.     As a result of T-Mobile's exposure of Mr. Heinz's PII, he has spent hours attempting to mitigate the affects of the Data Breach, including monitoring financial and other important accounts for fraudulent activity. Mr. Heinz anticipates that he will also have to spend significant time in the future on those tasks, as they are ongoing and time consuming.

33.     Given the highly-sensitive nature of the information stolen, and its subsequent dissemination to unauthorized parties, Mr. Heinz has already suffered injury and remains at a substantial and imminent risk of future harm.

**E.     FTC Security Guidelines Concerning PII**

34.     The Federal Trade Commission ("FTC") has established security guidelines and recommendations to help entities protect PII and reduce the likelihood of data breaches.

35.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures

CLASS ACTION COMPLAINT - 9

to protect PII by companies like Defendant. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

36.     In 2016, the FTC provided updated security guidelines in a publication titled *Protecting Personal Information: A Guide for Business*. Under these guidelines, companies should protect consumer information they keep; limit the sensitive consumer information they keep; encrypt sensitive information sent to third parties or stored on computer networks; identify and understand network vulnerabilities; regularly run up-to-date anti-malware programs; and pay particular attention to the security of web applications – the software used to inform visitors to a company's website and to retrieve information from the visitors.

37.     The FTC recommends that businesses do not maintain payment card information beyond the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third parties with access to sensitive information use reasonable security measures.

38.     The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

39.     The FTC has brought several actions to enforce Section 5 of the FTC Act. According to its website:

> When companies tell consumers they will safeguard their personal information, the FTC can and does take law enforcement action to make sure that companies live up these promises. The FTC has brought legal actions against organizations that have violated consumers' privacy rights,

CLASS ACTION COMPLAINT - 10

or misled them by failing to maintain security for sensitive consumer information, or caused substantial consumer injury. In many of these cases, the FTC has charged the defendants with violating Section 5 of the FTC Act, which bars unfair and deceptive acts and practices in or affecting commerce. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security.[19]

40.     T-Mobile was aware or should have been aware of its obligations to protect its customers' PII and privacy before and during the Data Breach, yet failed to take reasonable steps to protect customers from unauthorized access. Among other violations, T-Mobile violated its obligations under Section 5 of the FTC Act.

**F.     The Data Breach Harmed Plaintiffs and Class Members**

41.     Plaintiffs and Class members have suffered and will continue to suffer harm because of the Data Breach.

42.     Plaintiffs and Class members face an imminent and substantial risk of injury of identity theft and related cyber crimes due to the Data Breach. Once data is stolen, malicious actors will either exploit the data for profit themselves or sell the data on the dark web to someone who intends to exploit the data for profit. Hackers would not incur the time and effort to steal PII and then risk prosecution by listing it for sale on the dark web if the PII was not valuable to malicious actors.

43.     The dark web helps ensure users' privacy by effectively hiding server or IP details from the public. Users need special software to access the dark web. Most websites on the dark web are not directly accessible via traditional searches on common search engines and are therefore accessible only by users who know the addresses for those websites.

44.     Malicious actors use PII to gain access to Class members' digital life, including bank accounts, social media, and credit card details. During that process, hackers can harvest

---

[19] *Privacy and Security Enforcement*, Fed. Trade Comm'n, https://www.ftc.gov/news-events/topics/protecting-consumer-privacy-security/privacy-security-enforcement.

CLASS ACTION COMPLAINT - 11

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1   other sensitive data from the victim's accounts, including personal information of family,

2   friends, and colleagues.

3       45.    Consumers are injured every time their data is stolen and placed on the dark

4   web, even if they have been victims of previous data breaches. Not only is the likelihood of

5   identity theft increased, but the dark web is not like Google or eBay. It is comprised of

6   multiple discrete repositories of stolen information. Each data breach puts victims at risk of

7   having their information uploaded to different dark web databases and viewed and used by

8   different criminal actors.

9       46.    T-Mobile issued misleading public statements about the Data Breach, including

10   its SEC filing[20] and press release,[21] in which it attempts to downplay the seriousness of the

11   Data Breach by stating that the PII stolen did not include Social Security numbers. T-Mobile

12   disingenuously attempts to paint its fifth data breach in five years as no harm, no foul.

13       47.    Its SEC filing stated: "Our systems and policies prevented the most sensitive

14   types of customer information from being accessed, and as a result, based on our investigation

15   to date, customer accounts and finances were not put at risk directly by this event."

16       48.    Its press release stated: "While no information was obtained for impacted

17   customers that would compromise the safety of customer accounts or finances, we want to be

18   transparent with our customers and ensure they are aware."

19       49.    T-Mobile's intentionally misleading public statements ignore the serious harm

20   its security flaws caused to the Class. Worse, those statements could convince Class members

21   that they do not need to take steps to protect themselves.

22       50.    The data security community agrees that the PII compromised in the Data

23   Breach greatly increases Class members' risk of identity theft and fraud.

24   

25       [20] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001283699/000119312523010949/d641142d8k.htm
    [21] https://www.t-mobile.com/news/business/customer-information

CLASS ACTION COMPLAINT - 12

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

51.     As Justin Fier, senior vice president for AI security company Darktrace, observed following the Data Breach "[t]here are dozens of ways that the information that was stolen could be weaponized." He added that such a massive treasure trove of consumer profiles could be of use to everyone from nation-state hackers to criminal syndicates.[22]

52.     Criminals can use the PII that T-Mobile lost to target Class members for imposter scams, a type of fraud initiated by a person who pretends to be someone the victim can trust in order to steal sensitive data or money.[23] A scammer can more convincingly impersonate T-Mobile if they have the victim's account number or phone number.

53.     The PII accessed in the Data Breach therefore has significant value to the hackers that have already sold or attempted to sell that information and may do so again.

54.     The breach has also exposed Class members to increased risk of SIM swapping attacks. As explained by WIRED, "[t]he information involved in the new breach could be especially useful to hackers for SIM swap attacks, in which they take control of victims' phone numbers and then abuse the access to take over accounts, including by capturing two-factor authentication codes sent over SMS."[24]

55.     Chester Wisniewski, field chief technology officer for applied research at security company Sophos, suggested that to protect themselves, Class members not use SMS text messages as a two-factor authentication method for financial accounts.[25]

56.     Malicious actors can use Class members' PII to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file

---

[22] https://www.cnet.com/tech/services-and-software/t-mobile-gets-hacked-again-is-the-un-carrier-un-safe/
[23] https://consumer.ftc.gov/features/imposter-scams
[24] *T-Mobile's $150 Million Security Plan Isn't Cutting It*, WIRED (Jan. 20, 2023), *available at* https://www.wired.com/story/tmobile-data-breach-again/.
[25] https://www.cnet.com/tech/services-and-software/t-mobile-gets-hacked-again-is-the-un-carrier-un-safe/

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    fraudulent tax returns, obtain government benefits, obtain government IDs, or create

2    "synthetic identities."

3    57.    As established above, the PII accessed in the Data Breach is also very valuable

4    to T-Mobile. T-Mobile collects, retains, and uses this information to increase profits through

5    predictive and other targeted marketing campaigns. T-Mobile customers value the privacy of

6    this information and expect T-Mobile to allocate enough resources to ensure it is adequately

7    protected. Customers would not have done business with T-Mobile, provided their PII and

8    payment card information, and/or paid the same prices for T-Mobile's goods and services had

9    they known T-Mobile did not implement reasonable security measures to protect their PII. T-

10   Mobile boasts that it is the second largest wireless carrier in the country. Customers expect

11   that the payments they make to the carrier, either prepaid or each month, incorporate the costs

12   to implement reasonable security measures to protect customers' personal information.

13   58.    The PII accessed in the Data Breach is also very valuable to Plaintiffs and Class

14   members. Consumers often exchange personal information for goods and services. For

15   example, consumers often exchange their personal information for access to wifi in places like

16   airports and coffee shops. Likewise, consumers often trade their names and email addresses

17   for special discounts (*e.g.*, sign-up coupons exchanged for email addresses). Consumers use

18   their unique and valuable PII to access the financial sector, including when obtaining a

19   mortgage, credit card, or business loan. As a result of the Data Breach, Plaintiffs and Class

20   members' PII has been compromised and lost significant value.

21   59.    Plaintiffs and Class members will face a risk of injury due to the Data Breach

22   for years to come. Malicious actors often wait months or years to use the personal information

23   obtained in data breaches, as victims often become complacent and less diligent in monitoring

24   their accounts after a significant period has passed. These bad actors will also re-use stolen

25   personal information, meaning individuals can be the victim of several cyber crimes

CLASS ACTION COMPLAINT - 14

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

stemming from a single data breach. Finally, there is often significant lag time between when a person suffers harm due to theft of their PII and when they discover the harm. For example, victims rarely know that certain accounts have been opened in their name until contacted by collections agencies. Plaintiffs and Class members will therefore need to continuously monitor their accounts for years to ensure their PII obtained in the Data Breach is not used to harm them.

60.     Even when reimbursed for money stolen due to a data breach, consumers are not made whole because the reimbursement fails to compensate for the significant time and money required to repair the impact of the fraud.

61.     Victims of identity theft also experience harm beyond economic effects. According to a 2018 study by the Identity Theft Resource Center, 32% of identity theft victims experienced negative effects at work (either with their boss or coworkers) and 8% experienced negative effects at school (either with school officials or other students).

62.     The U.S. Government Accountability Office likewise determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."

63.     Plaintiffs and Class member customers have failed to receive the value of the T-Mobile services for which they paid and/or would have paid less had they known that T-Mobile was failing to use reasonable security measures to secure their data.

**G.     Defendant Failed to Take Reasonable Steps to Protect its Customers' PII**

64.     T-Mobile requires its customers to provide a significant amount of highly personal and confidential PII to purchase its good and services. Defendant collects, stores, and uses this data to maximize profits while failing to encrypt or protect it properly.

CLASS ACTION COMPLAINT - 15

65.     T-Mobile has legal duties to protect its customers' PII by implementing reasonable security features. This duty is further defined by federal and state guidelines and industry norms.

66.     Defendant breached its duties by failing to implement reasonable safeguards to ensure Plaintiffs' and Class members' PII was adequately protected. As a direct and proximate result of this breach of duty, the Data Breach occurred, and Plaintiffs and Class members were harmed. Plaintiffs and Class members did not consent to having their PII disclosed to any third-party, much less a malicious hacker who would sell it to criminals on the dark web.

67.     The Data Breach was a reasonably foreseeable consequence of Defendant's inadequate security systems. T-Mobile, which made approximately $70 billion in revenue in 2020, certainly has the resources to implement reasonable security systems to prevent or limit damage from data breaches. And after almost yearly data breaches for the past 5 years, it knew that its systems were utterly lacking. Even so, it failed to properly invest in its data security. Had T-Mobile implemented reasonable data security systems and procedures (*i.e.*, followed guidelines from industry experts and state and federal governments), then it likely could have prevented hackers from infiltrating its systems and accessing its customers' PII.

68.     T-Mobile's failure to implement reasonable security systems has caused Plaintiffs and Class members to suffer and continue to suffer harm that adversely impact Plaintiffs and Class members economically, emotionally, and/or socially. As discussed above, Plaintiffs and Class members now face a substantial, imminent, and ongoing threat of identity theft, scams, and resulting harm. These individuals now must spend significant time and money to continuously monitor their accounts and credit scores and diligently sift out phishing communications to limit potential adverse effects of the Data Breach regardless of whether any Class member ultimately falls victim to identity theft.

CLASS ACTION COMPLAINT - 16

69.     In sum, Plaintiffs and Class members were injured as follows: (i) theft of their PII and the resulting loss of privacy rights in that information; (ii) improper disclosure of their PII; (iii) the lost value of unauthorized access to their PII; (iv) diminution in value of their PII; (v) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (vi) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; (vii) overpayments to T-Mobile for goods and services purchased, as Plaintiffs and Class members reasonably believed a portion of the sale price would fund reasonable security measures that would protect their PII, which was not the case; and/or (viii) nominal damages.

70.     Even though T-Mobile has decided to offer free credit monitoring for two years to its affected customers, this is insufficient to protect Plaintiffs and Class members. As discussed above, the threat of identity theft and fraud from the Data Breach will extend for many years and cost Plaintiffs and the Classes significant time and effort.

71.      Plaintiffs and Class members therefore have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages) that protects them from these long-term threats. Accordingly, this action represents the enforcement of an important right affecting the public interest and will confer a significant benefit on the general public or a large class of persons.

## VI.     CLASS ACTION ALLEGATIONS

72.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23 as representative of the Classes defined as follows:

> (a) **The Nationwide Class:** All U.S. residents whose data was exfiltrated in the Data Breach.

CLASS ACTION COMPLAINT - 17

(b) **The California Subclass:** All California residents whose data was

exfiltrated in the Data Breach.

73.     Specifically excluded from the Classes are Defendant; its officers, directors, or employees; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded from the Classes are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

74.     <u>Class Identity</u>: The members of the Classes are readily identifiable and ascertainable. Defendants and/or their affiliates, among others, possess the information to identify and contact Class members.

75.     <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, based on information and belief, the Nationwide Class consists of between 50 and 100 million customers whose data was compromised in the Data Breach, and the California Class consists of millions of customers whose data was compromised in the Data Breach.

76.     <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of the classes because all Class members had their PII accessed, exfiltrated, and stolen in the Data Breach and were harmed as a result.

77.     <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have no interest antagonistic to those of the classes and are aligned with Class members' interests because Plaintiffs were subject to the same Data Breach as Class members and faces similar threats due to the Data Breach as Class members. Plaintiffs have also retained competent counsel with significant experience litigating complex class actions, including Data Breach cases involving multiple classes.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

78.   <u>Commonality and Predominance</u>: There are questions of law and fact common to the classes. These common questions predominate over any questions affecting only individual Class members. The common questions of law and fact include, without limitation:

a.   Whether Defendant owed Plaintiffs and Class members a duty to implement and maintain reasonable security procedures and practices to protect their personal information;

b.   Whether Defendant breached an implied contract with Plaintiffs and Class members, including but not limited to whether Defendant breached an implied agreement with Plaintiffs and Class members to keep their PII confidential;

c.   Whether Defendant received a benefit without proper restitution making it unjust for Defendant to retain the benefit without commensurate compensation;

d.   Whether Defendant acted negligently in connection with the monitoring and/or protection of Plaintiffs' and Class members' PII;

e.   Whether Defendant breached its duty to implement reasonable security systems to protect Plaintiffs' and Class members' PII;

f.   Whether Defendant's breach of its duty to implement reasonable security systems directly and/or proximately caused damages to Plaintiffs and Class members;

g.   Whether Defendant adequately addressed and fixed the vulnerabilities that enabled the Data Breach;

h.   When Defendant learned of the Data Breach and whether its response was adequate;

CLASS ACTION COMPLAINT - 19

   i. Whether Plaintiffs and other Class members are entitled to credit monitoring and other injunctive relief;

   j. Whether Defendant provided timely notice of the Data Breach to Plaintiffs and Class members; and,

   k. Whether Class members are entitled to compensatory damages, punitive damages, and/or statutory or civil penalties as a result of the Data Breach.

79. Defendant has engaged in a common course of conduct and Class members have been similarly impacted by Defendant's failure to maintain reasonable security procedures and practices to protect customers' PII, as well as Defendant's failure to timely alert affected customers to the Data Breach.

80. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most if not all Class members would find the cost of litigating their individual claims prohibitively high and have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members and risk inconsistent treatment of claims arising from the same set of facts and occurrences.

Plaintiffs know of no difficulty likely to be encountered in the maintenance of this action as a class action under Federal Rule of Civil Procedure 23.

## VII. CLAIMS FOR RELIEF

### <u>COUNT I</u>
**Negligence**
*(On Behalf of the Nationwide Class or Alternatively State-Specific Subclasses)*

81. Plaintiffs repeat and reallege every allegation set forth in the preceding paragraphs.

CLASS ACTION COMPLAINT - 20

82.     Defendant owed Plaintiffs and Class members a duty to exercise reasonable care in protecting their PII from unauthorized disclosure or access. Defendant breached its duty of care by failing to implement reasonable security procedures and practices to protect this PII. Among other things, Defendant failed to: (i) implement security systems and practices consistent with federal and state guidelines; (ii) implement security systems and practices consistent with industry norms; (iii) timely detect the Data Breach; and (iv) timely disclose the Data Breach to impacted customers.

83.     Defendant knew or should have known that Plaintiffs' and Class members' PII was highly sought after by cyber criminals and that Plaintiffs and Class members would suffer significant harm if their PII was stolen by hackers.

84.     Defendant also knew or should have known that timely detection and disclosure of the Data Breach was required and necessary to allow Plaintiffs and Class members to take appropriate actions to mitigate the resulting harm. These efforts include, but are not limited to, freezing accounts, changing passwords, monitoring credit scores/profiles for fraudulent charges, contacting financial institutions, and cancelling or monitoring government-issued IDs such as passports and driver's licenses.

85.     Defendant had a special relationship with Plaintiffs and Class members who entrusted Defendant with several pieces of PII. Defendant's customers were required to provide PII when purchasing or attempting to purchase Defendant's products and services. Plaintiffs and Class members were led to believe Defendant would take reasonable precautions to protect their PII and would timely inform them if their PII was compromised, which Defendant failed to do.

86.     The harm that Plaintiffs and Class members suffered (and continue to suffer) was the reasonably foreseeable product of Defendant's breach of its duty of care. Defendant failed to enact reasonable security procedures and practices, and Plaintiffs and Class members

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

were the foreseeable victims of data theft that exploited the inadequate security measures. The PII accessed in the Data Breach is precisely the type of information that cyber criminals seek and use to commit cyber crimes.

87.     But-for Defendant's breach of its duty of care, the Data Breach would not have occurred and Plaintiffs' and Class members' PII would not have been stolen and offered for sale by an unauthorized and malicious party.

88.     As a direct and proximate result of the Defendant's negligence, Plaintiffs and Class members have been injured and are entitled to damages in an amount to be proven at trial. Such damages include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of their PII; lost value of unauthorized access to their PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

## COUNT II
### Negligence *Per Se*
*(On Behalf of the Nationwide Class or Alternatively State-Specific Subclasses)*

89.     Plaintiffs repeat and reallege every allegation set forth in the preceding paragraphs.

90.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duty.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

91.     Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

92.     Defendant's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

93.     Class members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

94.     Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiffs and Class members.

95.     As a direct and proximate result of the Defendant's negligence, Plaintiffs and Class members have been injured and are entitled to damages in an amount to be proven at trial. Such damages include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of their stolen PII; lost value of unauthorized access to their PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

CLASS ACTION COMPLAINT - 23

**COUNT III**
**Unjust Enrichment**
*(On Behalf of the Nationwide Class or Alternatively State-Specific Subclasses)*

96.     Plaintiffs repeat and reallege every allegation set forth in the preceding paragraphs.

97.     Plaintiffs and Class members have an interest, both equitable and legal, in the PII about them that was conferred upon, collected by, and maintained by Defendant and that was ultimately stolen in the Data Breach.

98.     Defendant was benefitted by the conferral upon it of the PII pertaining to Plaintiffs and Class members and by its ability to retain, use, and profit from that information. Defendant understood that it was in fact so benefitted.

99.     Defendant also understood and appreciated that the PII pertaining to Plaintiffs and Class members was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that PII.

100.     But for Defendant's willingness and commitment to maintain its privacy and confidentiality, that PII would not have been transferred to and entrusted with Defendant.

101.     Defendant continues to benefit and profit from its retention and use of the PII while its value to Plaintiffs and Class members has been diminished.

102.     Defendant also benefitted through its unjust conduct by selling its services for more than those services were worth to Plaintiffs and Class members, who would not have applied for or used T-Mobile service plans at all, had they been aware that Defendant would fail to protect their PII.

103.     Defendant also benefitted through its unjust conduct by retaining money that it should have used to provide reasonable and adequate data security to protect Plaintiffs' and Class members' PII.

104.     It is inequitable for Defendant to retain these benefits.

CLASS ACTION COMPLAINT - 24

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1       105.    As a result of Defendant's wrongful conduct as alleged in this Complaint

2   (including, among things, its knowing failure to employ adequate data security measures, its

3   continued maintenance and use of the PII belonging to Plaintiffs and Class members without

4   having adequate data security measures, and their other conduct facilitating the theft of that

5   PII), Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs

6   and Class members.

7       106.    Defendant's unjust enrichment is traceable to, and resulted directly and

8   proximately from, the conduct alleged herein, including the compiling and use of Plaintiffs'

9   and Class members' PII, while at the same time failing to maintain that information secure

10  from intrusion and theft by hackers and identity thieves.

11      107.    Under the common law doctrine of unjust enrichment, it is inequitable for

12  Defendant to be permitted to retain the benefits it received, and is still receiving, without

13  justification, from Plaintiffs and Class members in an unfair and unconscionable manner.

14  Defendant's retention of such benefits under circumstances making it inequitable to do so

15  constitutes unjust enrichment.

16      108.    The benefits conferred upon, received, and enjoyed by Defendant was not

17  conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to

18  retain these benefits.

19      109.    Plaintiffs have no adequate remedy at law.

20      110.    Defendant is therefore liable to Plaintiffs and Class members for restitution or

21  disgorgement in the amount of the benefit conferred on Defendant as a result of its wrongful

22  conduct, including specifically: the value to Defendant of the PII that was stolen in the Data

23  Breach; the profits Defendant is receiving from the use of that information; the amounts that T-

24  Mobile overcharged Plaintiffs and Class members for use of its services; and the amounts that

25

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    Defendant should have spent to provide reasonable and adequate data security to protect

2    Plaintiffs' and Class members' PII.

3                                    **COUNT IV**
                              **Breach of Implied Contract**
4            *(On Behalf of the Nationwide Class or Alternatively State-Specific Subclasses)*

5            111.    Plaintiffs repeat and reallege every allegation set forth in the preceding

6    paragraphs.

7            112.    Plaintiffs and Class members entered into an implied contract with T-Mobile

8    when they sought or obtained services from T-Mobile, or otherwise provided PII to T-Mobile.

9            113.    As part of these transactions, T-Mobile agreed to safeguard and protect the PII

10   of Plaintiffs and Class members, and in the alternative, nominal damages.

11           114.    Plaintiffs and Class members entered into implied contracts with the reasonable

12   expectation that T-Mobile's data security practices and policies were reasonable and consistent

13   with industry standards. Plaintiffs and Class members believed that T-Mobile would use part of

14   the monies paid to T-Mobile under the implied contracts to fund adequate and reasonable data

15   security practices.

16           115.    Plaintiffs and Class members would not have provided and entrusted their PII to

17   T-Mobile or would have paid less for T-Mobile's services in the absence of the implied

18   contract or implied terms between them and T-Mobile. The safeguarding of the PII of Plaintiffs

19   and Class members was critical to realize the intent of the parties.

20           116.    Plaintiffs and Class members fully performed their obligations under the

21   implied contracts with T-Mobile.

22           117.    T-Mobile breached its implied contracts with Plaintiffs and Class members to

23   protect their PII when it (1) failed to have security protocols and measures in place to protect

24   that information; and (2) disclosed that information to unauthorized third parties.

25

CLASS ACTION COMPLAINT - 26

118.     As a direct and proximate result of T-Mobile's breach of implied contract, Plaintiffs and Class members sustained actual losses and damages as described in detail above, including that they did not get the benefit of the bargain for which they paid and were overcharged by T-Mobile for its services.

<u>COUNT V</u>
**Breach of Confidence**
*(On Behalf of the Nationwide Class or Alternatively State-Specific Subclasses)*

119.     Plaintiffs repeat and reallege every allegation set forth in the preceding paragraphs.

120.     At all times during Plaintiffs' and Class members' interactions with T-Mobile, T-Mobile was fully aware of the confidential and sensitive nature of Plaintiffs' and Class members' PII.

121.     T-Mobile's relationship with Plaintiffs and Class members was governed by expectations that Plaintiffs' and Class members' protected PII would be collected, stored, and protected in confidence, and would not be disclosed to the public or any unauthorized third parties.

122.     Plaintiffs and Class members provided their respective PII to T-Mobile with the explicit and implicit understandings that T-Mobile would protect and not permit the PII to be disseminated to the public or any unauthorized parties.

123.     Plaintiffs and Class members also provided their respective PII to T-Mobile with the explicit and implicit understandings that T-Mobile would take precautions to protect the PII from unauthorized disclosure, such as following basic principles of encryption and information security practices.

124.     T-Mobile voluntarily received in confidence Plaintiffs' and Class members' PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

CLASS ACTION COMPLAINT - 27

125.     Due to T-Mobile's failure to prevent, detect, avoid the Data Breach from occurring by following best information security practices to secure Plaintiffs' and Class members' PII, Plaintiffs' and Class members' PII was disclosed and misappropriated to the public and unauthorized third parties beyond Plaintiffs' and Class members' confidence, and without their express permission.

126.     But for T-Mobile's disclosure of Plaintiffs' and Class members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. The Data Breach was the direct and legal cause of the theft of Plaintiffs' and Class members' PII, as well as the resulting damages.

127.     The injury and harm Plaintiffs and Class members suffered was the reasonably foreseeable result of T-Mobile's unauthorized disclosure of Plaintiffs' and Class members' PII. T-Mobile knew its computer systems and technologies for accepting, securing, and storing Plaintiffs' and Class members' PII had serious security vulnerabilities because T-Mobile failed to observe even basic information security practices or correct known security vulnerabilities.

128.     As a direct and proximate result of T-Mobile's breaches of confidence, Plaintiffs and Class members have been injured and are entitled to damages in an amount to be proven at trial. Such damages include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

work time; lost value of their PII; lost value of unauthorized access to their PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

### COUNT VI
**Declaratory Judgment**
*(On Behalf of the Nationwide Class)*

129.    Plaintiffs repeat and reallege every allegation set forth in the preceding paragraphs.

130.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., the Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

131.    An actual controversy has arisen in the wake of the Data Breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class members from further data breaches that compromise their PII. Plaintiffs remain at imminent risk that further compromises of their PII will occur in the future.

132.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant continues to owe a legal duty to secure consumers' PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes.

b.    Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII.

CLASS ACTION COMPLAINT - 29

1       133.    The Court also should issue corresponding prospective injunctive relief

2 requiring Defendant to employ adequate security practices consistent with law and industry

3 standards to protect consumers' PII.

4       134.    If an injunction is not issued, Plaintiffs and Class members will suffer

5 irreparable injury, and lack an adequate legal remedy, in the event of another data breach at T-

6 Mobile. The risk of another such breach is real, immediate, and substantial. If another breach

7 occurs, Plaintiffs and Class members will not have an adequate remedy at law because many of

8 the resulting injuries are not readily quantified and they will be forced to bring multiple

9 lawsuits to rectify the same conduct.

10      135.    The hardship to Plaintiffs and Class members if an injunction does not issue

11 exceeds the hardship to Defendant if an injunction is issued. Among other things, if another

12 massive data breach occurs at T-Mobile, Plaintiffs and Class members will likely be subjected

13 to fraud, identify theft, and other harms described herein. On the other hand, the cost to

14 Defendant of complying with an injunction by employing reasonable prospective data security

15 measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ

16 such measures.

17      136.    Issuance of the requested injunction will not disserve the public interest. To the

18 contrary, such an injunction would benefit the public by preventing another data breach at T-

19 Mobile, thus eliminating the additional injuries that would result to Plaintiffs and the millions

20 of consumers whose PII would be further compromised.

21 **WHEREFORE, Plaintiffs demand a trial by jury and hereby respectfully request:**

22      (a)    That the Court determine that Plaintiffs' claims are suitable for class treatment

23 and certify the proposed Class pursuant to Fed. R. Civ. P. 23;

24      (b)    That the Court appoint Plaintiffs as representatives of the Classes;

25      (c)    That Plaintiffs' counsel be appointed as counsel for the Classes;

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

(d)     That the Court award compensatory damages and punitive damages;

(e)     In the alternative, that the Court award nominal damages as permitted by law;

(f)     That the Court award injunctive or other equitable relief that directs Defendant to provide Plaintiffs and the Classes with free credit monitoring and identity theft protection, and to implement reasonable security procedures and practices to protect customers' PII that conform to relevant federal and state guidelines and industry norms;

(g)     That the Court award declaratory judgment in favor of Plaintiffs determining that Defendant's failure to implement reasonable security measures gives rise to a claim;

(h)     That the Court award reasonable costs and expenses incurred in prosecuting this action, including attorneys' fees and expert fees; and

(i)     Such other relief as the Court may deem just and proper.

## VIII.   JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues properly triable to a jury in this case.

Dated: January 31, 2023

TOUSLEY BRAIN STEPHENS PLLC

By: */s/ Kim D. Stephens, P.S.*
Kim D. Stephens, P.S., WSBA #11984
*/s/ Jason T. Dennett*
Jason T. Dennett, WSBA #30686
*/s/ Kaleigh N. Boyd*
Kaleigh N. Boyd, WSBA #52684
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Tel: (206) 682-5600/Fax: (206) 682-2992
kstephens@tousley.com
jdennett@tousley.com
kboyd@tousley.com

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992